**LISA SCOLARI**
**Attorney at Law**
**20 Vesey Street, Suite 400**
**New York, New York 10007**
scolarilaw@gmail.com

**TEL 212-227-8899**                                                                      FAX 212-964-2926

June 1, 2021

Honorable Jesse M. Furman
United States District Court
Southern District of New York
40 Foley Square
New York, N.Y. 10007
*via ECF*

**Re: United States v. Jianfeng Jiang,**
**AKA Jian Jiang Feng**
19 Cr. 39 (JMF)

Your Honor:

Jianfeng Jiang's hope for a better life for himself and his family was shattered when he learned he had cancer. He had come to the U.S. from his industrial riverside village in Fujian Province China, with the help of an exorbitantly expensive snakehead. Mr. Jiang's family felt the cost of smuggling him into America was worth it because there was no future in their horribly polluted hometown. The local factories had contaminated everything, even the river that everyone drank from. When Mr. Jiang was young his parents had been fishermen, making a living harvesting from the river and the nearby sea. But the river was destroyed by industrial waste and no matter how far out to sea they traveled, "there were no more fish". Over time many people in his village become ill and died of cancer. Mr. Jiang's parents worked at menial jobs to eke out a living. When he married and had a daughter, Mr. Jiang and his wife could barely support her.

They family focused their hopes on Mr. Jiang and America. He took a great risk and they shouldered a tremendous debut, but believed that once Mr. Jiang arrived in the U.S. life would improve. Since he was young and strong he could work, send money home, and eventually pay the debt. Arriving in 2009, Mr. Jiang worked in restaurants and lived frugally for several years. He was able to support his wife, daughter, and parents as well as slowly paying off the snakehead.

Tragically, although he had escaped the hopelessness of his hometown he could not avoid the illness that pervaded his village. In 2012, Mr. Jiang learned he had cancer in his left leg. When he was told that it was necessary to amputate his leg just below the knee to stop the cancer, Mr. Jiang became so seriously disturbed that he was treated as an inpatient in the Bellevue psychiatric unit. Mr. Jiang's fear of his culture's abhorrence of anyone with a deformity was compounded by the realization that he could no longer work.

After the loss of his leg and his inability to earn money, Mr. Jiang's wife left him, married another man and abandoned their daughter. Mr. Jiang was crushed but fortunately, his

parents assumed care of his young daughter. Desperate to make money to support his family and continue paying his smuggling debt, Mr. Jiang sought a way to work while sitting down. Despite having a prosthesis, he could not walk or stand for any period of time. He began selling phone cards but found the demand for cards fell off as service providers expanded cheaper options for calling China. When the payments toward the snakehead's fee were not forthcoming, his representatives visited Mr. Jiang's parents in China. Mr. Jiang knew the debt would not be forgiven and was anxious about their welfare. Sometime in 2017 he began selling untaxed cigarettes in addition to phone cards and was relieved that he could send money home again.

      His relief did not last long, however. Mr. Jiang had not undergone any preventative treatment and continued to feel ill. In 2016 it was discovered that the cancer had spread to Mr. Jiang's pancreas. The necessary surgery resulted in the removal of portions of his pancreas, intestine and colon. Meanwhile, cancer continued to ravage Mr. Jiang's family in China. In 2016 his father died of lung cancer and in 2019 his mother died of breast cancer. Mr. Jiang has lost many other relatives, aunts, uncles and cousins to cancer. His daughter, who is now fourteen lives with his sister.

      Despite continuing to experience medical problems, Mr. Jiang is wary of the medical establishment. Every time he has sought medical help, they "cut into him". He does not feel that he can be helped, explaining that he "does not expect to live very long". That fatalistic attitude nearly lead to his death this past December. The prosthesis he uses has not been changed or even adjusted since his surgery in 2012. There have been times when he ambulates without it on crutches because it is so uncomfortable. In early December Mr. Jiang notified the Chinese interpreter who communicates with him that he was experiencing pain in the remainder of his left leg. He described swelling, stabbing pain, and his terror of going to a hospital because of covid. Despite entreaties that he get checked due to the danger of severe infection, Mr. Jiang sought to alleviate his pain with traditional Chinese medicine. Ultimately in mid-December he reported that he had been admitted to N.Y. Presbyterian Lower Manhattan Hospital. After he had been there for a week on IV antibiotics, the doctors resorted to surgery on his leg to arrest the spread of infection. During his two week stay in the hospital Mr. Jiang was advised that he was also suffering from diabetes. His infection was so severe Mr. Jiang could not be sent home post surgery. Instead he was transferred to a rehablitation facility "in Queens" where he continued to receive IV antibiotics for nearly two months. When he was finally sent home, Mr. Jiang had lost more than twenty pounds.

### *Nature and circumstances of the offense*
Mr. Jiang has plead guilty and taken responsibility for his crime. We provided the forgoing background information to the Court, not to excuse but to give context to his conduct. Selling untaxed cigarettes from China caused a massive loss of tax income-in excess of two million dollars. As the loss is a drain on resources it is a serious offense. Apart from Shi Ying Lin, Mr. Jiang had the lowest loss amount of the five defendants in this case. In terms of guideline range Mr. Jiang's situation is most analogous to Shao Jun Guo, as each of their losses resulted in a 30-37 month range. This Court recognized that a guideline sentence of 30-37

2

months, which is driven by the financial loss, would be "unjust" for Shao Jun Guo and imposed a sentence of six months in jail and six months home incarceration. (Tr. sentencing, October 29, 2019 at 27).

Mr. Guo, supplied the cigarettes he imported from China to several of the co-defendants in this case. In addition, agents recovered mailing labels for 24 addresses to which Mr. Guo was shipping cigarettes. (PSR ¶ 24). Mr. Jiang mostly received the cigarettes directly from China and sold them local stores and to the public from a tiny stall in Chinatown. The two thousand dollars he paid for the stall's monthly rent cut into his profits. The amount he earned selling untaxed cigarettes was minuscule compared to the tax loss. While Mr. Jiang knew what he was doing was illegal, he did not have any sense of how serious it was. When he was arrested for selling untaxed cigarettes by state authorities, his case was resolved by an adjournment in contemplation of dismissal (ACD) and dismissed without a fine.

*Additional 3553(a) factors*

A guideline sentence would also be unjust for Mr. Jiang and significant 18 USC 3553(a) factors distinguish him from Mr. Gao. Mr. Jiang's pancreatic cancer, which has been verified by medical records obtained by probation, (PSR ¶ 64), is untreated and will eventually result in his death. His cancer and diabetes mean he is at extremely high risk for severe complications if he is exposed to covid 19. As the Court is aware, despite the BOP's efforts to prevent the spread of the virus, there have been continued outbreaks in MCC, MDC and federal prisons. Mr. Jiang is terrified of catching the virus but is also afraid of the vaccine. A sentence of jail and potential exposure to covid, could well hasten his death.

Although he has applied for political asylum and been granted a work authorization card, Mr. Jiang is facing deportation. While it is not clear that the conviction in this case would cause Mr. Jiang's removal, it certainly will not further his request for asylum. The probation department has reported that Jiang is a "deportable alien" with a "pending ICE detainer". (PSR ¶ 61) Jiang is unsure of his status as he can no longer afford immigration counsel. He has not been advised of the resolution of his asylum application and has been able to renew his work authorization. If there is an ICE detainer, a jail sentence will result in his transfer to immigration custody, which will also pose a grave threat to his health as covid has been rampant in detention centers.

*Conclusion*

The defense respectfully submits for all of the foregoing reasons, a non-guideline sentence of home detention rather than jail, with a period of supervision, would be appropriate in this case.

Respectfully,

*Lisa Scolari*

Lisa Scolari